Jonah M. Knobler
Caitlin A. Ross
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone:  (212) 336-2000
Fax:  (212) 336-2222
jknobler@pbwt.com
kross@pbwt.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| MODERN LANGUAGE ASSOCIATION OF AMERICA, | : | Index No. 23 Civ. _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | **COMPLAINT AND DEMAND FOR  JURY TRIAL** |
| APPEARANCE PUBLISHERS, V-KING SERVICES SAS, and VINCENT KLIMMECK, | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Modern Language Association of America ("MLA"), by and through its

attorneys, Patterson Belknap Webb & Tyler LLP, for its complaint against Defendants

Appearance Publishers, V-King Services SAS, and Vincent Klimmeck, alleges as follows:

**NATURE OF THE CASE**

1.      This is an action for violation of the Copyright Act of 1976, 17 U.S.C.

§ 101 *et seq.*; violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and

misrepresentation pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(f).

2.      MLA publishes, and owns the copyright in, the *MLA Handbook 9th Edition*

(the "*Handbook*"), a preeminent reference work in the field of academic research and writing.

14302979

3.      Defendants publish, market, and sell two books, *MLA Handbook 9th Edition Simplified* and *MLA 9 Simplified* (together, the "Infringing Works"), which infringe on MLA's copyright in the authentic *Handbook* and falsely suggest authorization by or affiliation with MLA and the authentic *Handbook*.

4.      Although the Infringing Works purport to "simplify" the *Handbook*, in reality, they are in large part unauthorized reproductions of the *Handbook*'s text, with minor tweaks to word choice and word order meant as a fig-leaf to conceal Defendants' copying.  Even the cover art of the Infringing Works is a close reproduction of the cover art of the authentic *Handbook*, down to its intentional use of MLA's unique five-color rainbow motif, which consumers associate with MLA.

5.      Defendants' sale of the Infringing Works has caused financial and reputational harm to MLA and has unjustly enriched Defendants.  Even without discovery, available evidence shows that students and educational institutions across the United States have purchased the Infringing Works in lieu of the authentic *Handbook*.  On information and belief, many of these purchases were made under the false impression that the Infringing Works were authorized by or affiliated with MLA, and would not have occurred otherwise.

6.      This harm to MLA and unjust enrichment to Defendants remains ongoing, and unless Defendants' conduct is enjoined, it will continue into the future.

7.      Accordingly, MLA seeks a judgment that Defendants' conduct violates the statutes listed above, as well as monetary and injunctive relief.

## THE PARTIES

8.      Plaintiff MLA is a registered 501(c)(3) nonprofit organization existing under the laws of the State of Maryland.  Its principal place of business is at 85 Broad Street, New

York City, New York.

9.      On information and belief, Defendant Appearance Publishers is a business entity of unknown legal structure, with its principal place of business at Senftenberger Ring 36C, 13435, Berlin, Germany.

10.     On information and belief, Defendant V-King Services SAS is a French joint stock company (*société par actions simplifiée*), with its place of business at 1001 Route du Port, 40180, Hinx, France.

11.     On information and belief, Defendant Vincent Klimmeck is a citizen of France, the President of V-King Services SAS, and the active and moving force behind its actions alleged herein.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1338(a) (action arising under an Act of Congress relating to copyrights) and 1331 (action arising under the laws of the United States).

13.     This Court has personal jurisdiction over Defendants pursuant to N.Y. CPLR 302(a)(1), in that, upon information and belief, Defendants conduct business in New York, including in this district.  Upon information and belief, Defendants have marketed, promoted, distributed, and sold the Infringing Works (and other products) in New York, thus purposefully availing themselves of the privilege of conducting activities within the state.

14.     This Court also has personal jurisdiction over Defendants pursuant to N.Y. CPLR 302(a)(3).  Defendants have infringed MLA's copyright and caused harm to MLA's commercial interests and reputation, either through the actions of their agents in New York or have done so outside of the state, foreseeably causing injury to MLA at its New York

headquarters.  Upon information and belief, Defendants have marketed, promoted, distributed, and sold the Infringing Works (and other products) in New York, thus purposefully availing themselves of the privilege of conducting activities within the state.  Upon information and belief, Defendants regularly do and solicit business in New York, derive substantial revenue from products sold in the state, and derive substantial revenue from interstate and international commerce.

15.     This Court also has personal jurisdiction over Defendants V-King Services SAS and Vincent Klimmeck by virtue of those Defendants' express "consent to the jurisdiction of any [United States federal] judicial district in which Amazon[.com] may be found."  Amazon.com "may be found" within this judicial district, *inter alia*, because it maintains a permanent physical place of business in this judicial district, and because it continuously and systematically does business in this judicial district.

16.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), (c), and (d), and 28 U.S.C. § 1400(a), because a substantial part of the events or omissions giving rise to MLA's claims occurred in this district; because Defendants are subject to personal jurisdiction in this district; and/or because an alien may be sued in any district.

## FACTS

**B.     MLA and its Activities**

17.     Founded in 1883, MLA is a world-renowned scholarly association that promotes the study and teaching of languages and literatures.

18.     MLA's reputation and influence are international in scope, with approximately 22,000 members from 145 countries.  Members participate in committees, attend an annual convention, and contribute to MLA publications, including books, journals, style

guides, and an international bibliography.

19.     Among other things, MLA publishes peer-reviewed resources that support teachers and students in writing, research, language instruction, literary studies, and related fields. Representing some of the finest pedagogical materials in the humanities, these publications draw on the diverse talents and experiences of MLA's members to advance MLA's educational and academic mission.

**C.     The Authentic *Handbook***

20.     One of MLA's publications is the *Handbook*, a reference work regarding, *inter alia*, the proper documentation of sources in scholarly writing.  The current, ninth edition of the *Handbook*, published in 2021, is registered with the United States Copyright Office under Registration No. TX-8-962-785 (effective date April 14, 2021).  A true and correct copy of that registration certificate is attached to this Complaint as Exhibit A.

21.     Although the *Handbook* may be best known for its comprehensive system of principles regarding the citation of sources (known as "MLA Style"), it is much more than that. The *Handbook* also provides hundreds of example citations, arranged by publication format (*e.g.*, websites, YouTube videos, and interviews); provides example essays and annotated bibliographies; explains how to find publication information for a variety of sources; and conveys advice on topics such as grammar and punctuation, avoiding plagiarism, group projects, and principles of inclusive language.

22.     Generations of students, teachers, authors, editors, and publishers have relied upon the *Handbook*, both in the United States and abroad.  It is widely assigned in writing courses and used as a guide by academic and professional writers.  MLA has sold millions of copies of the *Handbook* since its first publication in 1977.  The current edition of the *Handbook*

was named a *Choice* Outstanding Academic Title, a prestigious recognition awarded by *Choice Reviews*, a unit of the Association of College and Research Libraries.

23.     MLA allocates considerable resources to developing and maintaining the *Handbook* and the standards it promotes.  The *Handbook* is an invaluable asset to MLA, helping translate its work advancing study of language and literature to audiences worldwide.

24.     Indeed, thanks to the *Handbook*, "MLA Style" has obtained status as a well-known cultural touchstone.  References to "MLA Style" and the *Handbook* in popular media abound, from mentions in the television series *Orange Is the New Black*, to the literary journal *McSweeney's*, to the satirical newspaper *The Onion*, to viral Twitter threads.

25.     In short, the *Handbook* has become synonymous with care and precision in communication and with careful judgment and source evaluation.  Anything that erodes trust in those standards is a threat to MLA's most important financial and reputational asset.

**D.     Appearance Publishers and its Website**

26.     Defendant Appearance Publishers purports to be a publisher and seller of books, although little information is publicly available about its business and operations.

27.     Appearance Publishers maintains an interactive Internet website at http://appearancepublishers.com.  According to the registration information for this web domain, it was first registered on November 6, 2022.  Appearance Publishers registered this web domain anonymously through a so-called proxy registration service called Contact Privacy Inc. in order to conceal its true identity and contact information.

28.     On its website, Appearance Publishers states that it has "developed a series of books to simplify the writing process for students and professionals."  In reality, those books appear to be knockoffs of well-established reference and style guides, including the

*Handbook*, as well as the Associated Press (AP) Style Manual, the American Psychological Association (APA) Style Manual, and the Chicago Manual of Style.  Appearance Publishers claims to have sold "[m]illions of copies" of these works "worldwide."

29.     Appearance Publishers' website operates as an interactive store, from which customers may purchase any of its books for delivery.  Appearance Publishers touts its "[g]lobal shipping" and states: "We ship the books globally thanks to several print facilities across the world including locations in the United States...."

30.     Appearance Publishers plainly anticipated and intended that its products, including the Infringing Works, would be delivered to New York, because "New York" is an option that shoppers may select from the drop-down menu used during the checkout process. Below is a screen capture from Appearance Publishers' website in which "New York" has been selected from this drop-down menu:

31.     Below is a screenshot showing a shopping cart containing one of the Infringing Works, with a shipment address in the Southern District of New York:

 

32.     Appearance Publishers' website also solicits "bulk orders" for "academic and other needs," with the promise of a "reduction in price."

33.     Appearance Publishers' website provides a contact address for the business at Senftenberger Ring 36C, 13435, Berlin, Germany.  It does not specify the name of any human being associated with the business or any other information about the business, its history, its ownership, or its management.

34.     MLA and its counsel have been unable to locate any other information about Appearance Publishers elsewhere on the Internet, including the name of any human being associated with the business.

**E.      The Infringing Works**

35.     Defendant Appearance Publishers produces, markets, and sells two Infringing Works that infringe on MLA's copyright in the *Handbook* and falsely suggest endorsement by or association with MLA.  Those works are titled *MLA Handbook 9ᵗʰ Edition Simplified* ("*9ES*") and *MLA 9ᵗʰ Simplified* ("*9S*").  The Infringing Works contain no statement or

disclaimer that they are not approved by, authorized by, or affiliated with MLA.

36.     Appearance Publishers markets *9ES* as a "guide" that summarizes MLA Style.  According to the Foreword, this "guide" "will assist" students in "learn[ing] how to use [MLA] Style" and "reflects the newest version of the MLA Handbook (9th edition)."  *9ES* purports to "address[] the vast majority of questions about using MLA style correctly."

37.     Similarly, Appearance Publishers describes *9S* as a "guide" "designed for students and professional writers to quickly learn updated MLA style in a convenient and easy way."  *9S* appears to be a condensed version of *9ES*, spanning 97 as opposed to 124 pages.

38.     Despite these descriptions, the Infringing Works consist in large part of near-verbatim transcriptions of the authentic *Handbook*, with only minor changes to words, sentence structure, and grammar in a half-hearted attempt to disguise the copying.

39.     The unlawful copying begins with the Infringing Works' cover design, which features the same five-colored rainbow graphic, white background, and bold black sans-serif text that appear on the cover of the authentic *Handbook*:

|              *Handbook*              | **Infringing Works** |
| --- | --- |

  

9

40.     The five-color rainbow motif that the Infringing Works have lifted from
the cover of the authentic *Handbook* is a well-known source identifier associated with MLA.
That same five-color rainbow motif is used in MLA's logo, on MLA's website, and on the covers
of other authentic MLA publications:





41.     On information and belief, the covers of the Infringing Works are
intentionally designed to suggest a false association between the Infringing Works and MLA and
the authentic *Handbook*.  As alleged further below, such confusion has, in fact, occurred.

42.     The blatant copying continues with the Infringing Works' text.  Nearly
every page of the Infringing Works contains at least one instance of verbatim or near-verbatim
copying from the *Handbook*.

43.     The direct copying in the Infringing Works is obvious despite Defendants'
superficial efforts to hide it.  For example, the Infringing Works routinely use numbered lists or
bullet points to subdivide sentences or paragraphs taken from the *Handbook*, giving the

appearance of having "summarized" the *Handbook*, when the words and sentences used in the Infringing Works are actually identical.  In other instances, the Infringing Works take part of a sentence verbatim from the *Handbook*, while slightly paraphrasing or reordering the rest of that sentence. In still other instances, the Infringing Works simply change phrases in the *Handbook* to a different grammatical tense or number—for example, from declarative to imperative, or from plural to singular (*e.g.*, the phrase "Spelling should be consistent in a paper" in the *Handbook* becomes "Keep spelling consistent in your paper" in *9ES*).

44.     In addition to using the *Handbook*'s language when reproducing its substantive rules, instructions, and advice, in many instances, the author(s) of the Infringing Works did not even bother coming up with their own illustrative examples.  For instance, to illustrate the use of italics in scriptural citations, the *Handbook* gives the example "(*New Jerusalem Bible*, Ezek. 1.5)."  To illustrate the operation of this rule, Defendants could have chosen any book from any edition of any scriptural work from any religion.  Instead, Defendants copied the *Handbook*'s example nearly verbatim, with a single immaterial alteration meant to disguise their plagiarism: "(*New Jerusalem Bible*, Ezek. 1.2)."

45.     Similarly, the *Handbook* uses the French title "*Paris, capitale du XIXe siècle*" to illustrate the rule regarding numbers in foreign-language titles.  Defendants could have used any title (real or imaginary), in any language, containing any number.  But the example provided in *9ES* is "*Histoire du XIXe siècle*."

46.     Perhaps most ironically, the Infringing Works even plagiarize the *Handbook*'s definition of plagiarism and its warning of plagiarism's legal consequences:

- *Handbook*: "Plagiarism is presenting another person's ideas, words, or entire work as your own.  Plagiarism may sometimes have legal repercussions (e.g., when it involves copyright infringement) but is always unethical."

- *9ES*: "Plagiarism is presenting another person's ideas as your own which is unethical and may have legal effects when copyright infringement takes place."

47.    A few further representative examples of Defendants' copying are provided in the chart below.  A more extensive (but still non-exhaustive) list, including citations to specific page numbers, is attached to this Complaint as Exhibit B.[1]

| *Handbook* | *9ES* | *9S?* |
|---|---|---|
| Avoid negatively judging others' experiences. | **Avoid judging** person's [sic] **experience** in a **negative** way... | Yes |
| Use a dictionary to check for offensive terms. | **Use a dictionary to** double-**check for offensive terms**... | Yes |
| An epigraph is a short quotation at the beginning of a work that establishes its theme or mood | **Epigraph**s are **short quotation**s **at the beginning of** the **work that establish** a special **mood**. | No |
| Spelling should be consistent in a paper. | Keep the **spelling consistent in** your **paper**… | No |
| [S]pell out those numbers that can be written in a word or two ... one, two-thirds | **Spell out** a **number that can be written in** 1 **or 2 word**s: ... **one** ... **two-thirds** | No |
| [F]ollow the source for numbers in foreign language titles... *Paris, capitale du XIXe siècle* | For **foreign titles**, write the **numbers** as they appear in the original title... *Histoire du XIXe siècle* | No |
| Content notes offer ... commentary or information that the main text cannot accommodate...<br><br>To explain word choice... To identify or comment on allusions... To provide more examples... To justify the scope of your study... To point to an area of future research... To acknowledge... To identify authors whose names appear as et al. in documentation. | **Content notes** provide detailed **commentary** that could distract the reader from the **main text...**<br><br>**To explain word choice**... **To comment on allusions**... **To provide more examples**... **To** specify **the scope of** research... **To point to** the **future research**... **To acknowledge** important person. [sic] ... **To identify authors whose names** are written as "**et al.**" | Yes |
| (*New Jerusalem Bible*, Ezek. 1.5). | (*New Jerusalem Bible*, **Ezek.** 1.2). | Yes |
| Conclude each element with the punctuation mark shown in the template—but always end your entry with a period. | Follow **each element with the punctuation mark** as **shown in the template**.  **End** the **entry with a period.** | Yes |

---

[1] All examples in the center column of this chart appear in *9ES*.  Bolded language in the center column signifies text that has been copied verbatim from the corresponding passage in the *Handbook*.  The "*9S?*" column on the right side of the chart indicates whether the specified example also appears in *9S*.

48.     In sum, the Infringing Works copy far more than just the citation rules that constitute "MLA Style."  Rather, they knowingly and intentionally reproduce, verbatim or near-verbatim, a large amount of MLA's creative and protected expression, including word choice, sentence structure, and illustrative examples.

49.     Defendants' mimicry of the *Handbook*'s design and text is not protected by the defense of fair use.  Defendants' use of MLA's copyrighted material is commercial and non-transformative.  The *Handbook* is not merely factual, but contains substantial amounts of creative expression, including explanatory prose and arbitrarily chosen illustrative examples.  The portion of the *Handbook* reproduced in the Infringing Works is substantial and includes the protected expression at the heart of the *Handbook*.  And, as alleged below, Defendants' infringing conduct usurps both the existing market for the *Handbook* and a natural extension of that market (*i.e.*, adaptations or abbreviations of the *Handbook*) which rightfully belongs to MLA.

50.     Moreover, on information and belief, the Infringing Works are of inferior quality to the authentic *Handbook*.  The Infringing Works contain a number of grammatical and typographical errors, and in several instances, they incorrectly summarize or paraphrase the corresponding rule or principle from the *Handbook*, thereby providing substantively incorrect information to readers seeking to learn and employ correct "MLA Style."

**F.     Defendants' Widespread Sale of the Infringing Works**

51.     Defendants have marketed and sold the Infringing Works extensively, including in the United States, and in New York.  As alleged above, Appearance Publishers claims to have sold millions of copies of their books in total.

52.     As alleged above, Appearance Publishers markets and sells the Infringing Works to customers worldwide, including in New York, via its own interactive website.

53.     Defendants have also sold (and/or continue to sell) the Infringing Works to customers, including in New York, through online bookstores and marketplaces, such as Amazon.com, Walmart.com, AbeBooks.com, Thriftbooks.com, Textbooks.com, BarnesAndNoble.com, HalfPriceBooks.com, Powells.com, books.google.com, and eBay.com.

54.     On information and belief, the Infringing Works have also been sold (and/or continue to be sold) by brick-and-mortar bookstores throughout the United States, including in New York.

55.     On information and belief, Defendants have also sold (and/or continue to sell) the Infringing Works in collegiate bookstores.  MLA has observed the Infringing Works on sale at the online bookstores of Florida Atlantic University and De Anza College, and it reasonably believes that there are many others that have sold the Infringing Works.

56.      On information and belief, the Infringing Works have been purchased by school libraries across the United States.

57.     On information and belief, the Infringing Works have been placed on academic syllabi in lieu of the authentic *Handbook* at high schools and universities across the United States, resulting in student purchases of the Infringing Works in lieu of the *Handbook*.

58.     For instance, at Imperial Valley College in California, the course ESL 108 (College Composition for Non-Native Speakers) teaches students to "Use MLA documentation style in citing research."  The course's syllabus directs students to purchase one of the Infringing Works, rather than the *Handbook*:

**TEXTBOOK(S) AND SUPPLEMENT(S):**

Graff, G., Birkenstein,C., and Durst, R. 2021. *They Say, I Say - with Readings* 5th . W. W. Norton & Company ISBN: 978-0393538731.
Kiszner, L. and Mandell, S. 2020. *Patterns for College Writing: A Rhetorical Reader and Guide* 15th. Bedford/St. Martin's ISBN: 978-1319243791.
Harrop, J. 2018. *The Simple Math of Writing Well - Writing for the 21st Century* OER. ISBN: 9780999829202.
Fisch, A. Leininger, L.A., Egle, B. *College Composition 1* Lumen Learning ISBN: OER .
Appearance Publishers *MLA 9 Simplified: Easy Way Guide to MLA Handbook: Updated for the MLA 9th Edition Handbook (Student Citation Styles)*, Appearance Publishers , 00-17-2021
(OER) English Composition I Corequisite - Lumen Learning
(OER) English 101: Rhetoric and Composition - http://www.oercommons.org/courses/engl-101-rhetoric-composition-by-bay-college/view
Jhumpa Lahiri. The Namesake. Mariner Books, 2004.
Lorrie Moore and Heidi Pitlor. One Hundred Years of the Best American Short Stories. Houghton Mifflin Harcourt, 2015.
Rebecca Skloot. The Immortal Life of Henrietta Lacks.. 2nd Broadway, 2011.
T.C. Boyle. The Tortilla Curtain. Penguin Books,

59.     Likewise, the 2022-2023 syllabus for English III and IV at Riverfield Academy in Louisiana "recommend[s]" one of the Infringing Works, rather than the *Handbook*, "for learning MLA 9th Edition format," and directs students to Amazon.com to purchase it:

- This simplified companion guide is not required but recommended for learning MLA 9th Edition format. You can find this guide on Amazon for $9.94.  ➜
  - *MLA 9 Simplified: Easy Way Guide to MLA Handbook: Updated for the MLA 9th Edition* Handbook Paperback – May 1, 2022
    by Appearance Publishers



60.     On information and belief, the Infringing Works have also been sold and distributed through other channels of which MLA is not presently aware.

61.     In the course of its investigation, MLA purchased both Infringing Works via Amazon.com, and both Infringing Works were physically shipped to MLA at an address within New York City in the state of New York.

**G.      Participation of V-King Services SAS and Vincent Klimmeck**

62.      After learning of the Infringing Works and determining that they infringe MLA's copyright, MLA filed a notice of infringement with Amazon.com pursuant to the Digital Millennium Copyright Act ("DMCA"), requesting that the Infringing Works be removed from Amazon.com's website.  *See* 17 U.S.C. § 512(c)(3).  Amazon.com complied and removed the Infringing Works from its site.

63.      The DMCA also provides for a counter-notice procedure, by which the target of a notice of infringement may affirm that the work in question is not copyright-infringing, and thereby request that the website owner restore the challenged work to its website.  *See* 17 U.S.C. § 512(g)(3).

64.      On or about May 1, 2023, Defendant V-King Services SAS, acting through the person of Defendant Vincent Klimmeck, filed a DMCA counter-notice with Amazon.com, requesting that the Infringing Works be restored to Amazon.com's website.  A copy of that counter-notice is attached to this Complaint as Exhibit C.

65.      In its counter-notice, V-King Services SAS provided the business address of 1001 Route du Port, 40180 Hinx France.  It also provided the telephone contact number (718) 577-2662—which, oddly, appears to be a telephone number with a New York City area code. The counter-notice was digitally signed by Defendant Vincent Klimmeck on behalf of V-King Services SAS.

66.      According to public records available on the Internet, V-King Services SAS is a French joint stock company (*société par actions simplifiée*), created in February 2020, with its place of business at 1001 Route du Port, 40180, Hinx, France.  Those records identify Defendant Vincent Klimmeck as the President of V-King Services SAS.  They also state that

"[t]he purpose of the company, both in France and abroad, is the publishing and direct and indirect distribution of books; distance selling operations of unregulated goods; research and development; and technical and software services."[2]

67.     In the counter-notice, Klimmeck affirmed on behalf of V-King Services SAS that he "ha[s] a good faith belief that the material identified in [MLA's] Notice of Infringement was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled."  This statement was knowingly false when made, as Defendants lacked any good-faith belief that the Infringing Works are lawful and non-infringing, and knew full well that the Infringing Works were not removed "as a result of mistake or misidentification."

68.     In the counter-notice, Klimmeck, on behalf of V-King Services SAS, also expressly "agree[d] to accept service of process from" MLA in the event of a lawsuit and "consent[ed] to the jurisdiction of any [United States federal] judicial district in which Amazon may be found."

69.     After receiving the counter-notice, Amazon.com informed MLA that it would restore the Infringing Works to its website and continue to distribute and sell them, "unless you provide us with notice that a lawsuit has been filed against the counter-noticing party within 10 business days."

70.     Based on the facts pleaded herein, MLA has a good-faith belief that Defendants V-King Services SAS and Vincent Klimmeck are the alter egos of Defendant Appearance Publishers, and/or are the active and moving force behind the unlawful conduct of Appearance Publishers alleged herein, and/or have conspired to commit, induced, aided and

---

[2] "*La Société a pour objet, tant en France qu'à l'étranger : l'édition et la distribution directe et indirecte de livres; les opérations de vente à distance de biens non réglementés; la recherche et le développement; les services techniques et logiciels.*"

abetted, and/or participated in the unlawful conduct of Appearance Publishers alleged herein.

71.     Indeed, the filing of the DMCA counter-notice by V-King Services SAS and Vincent Klimmeck is *itself* inducement, aiding and abetting, and participation in the unlawful conduct alleged herein, as it was a willful instruction to Amazon.com to restore the Infringing Works to its website and permit their continued distribution and sale, with full knowledge of MLA's claim that they infringed MLA's rights.

72.     Independently, the filing of the counter-notice by V-King Services SAS and Vincent Klimmeck violated 17 U.S.C. § 512(f), which provides that "[a]ny person who knowingly materially misrepresents [in a DMCA counter-notice] ... that material or activity was removed or disabled by mistake or misidentification ... shall be liable for any damages, including costs and attorneys' fees, incurred ... by any copyright owner."

## H.     Injury to MLA

73.     The violations of law alleged herein have caused substantial harm to MLA, both monetary and reputational, while also unjustly enriching Defendants.

74.     Defendants' violations have caused consumers to purchase the Infringing Works instead of the authentic *Handbook*, thereby depriving MLA of revenue that rightfully belongs to MLA.  Had the Infringing Works not been available, those consumers would have purchased the authentic *Handbook* instead.

75.     For example, the following comment from an Amazon.com reviewer reflects that the reviewer purchased one of the Infringing Works from Amazon.com, instead of the *Handbook*, to "teach me how to write MLA formatted papers."  This demonstrates that the Infringing Works act as a substitute for the authentic *Handbook* and usurp its market:



Veronica

⭐⭐⭐⭐⭐ **Extremely useful for masters programs**

Reviewed in the United States us on November 6, 2022

**Verified Purchase**

I was used to APA format for my undergrad in criminal justice. This was perfect when I started to work on my MBA to teach me how to write MLA formatted papers.

76.     On information and belief, many of these purchases were made under the mistaken impression that the Infringing Works are approved by, endorsed by, authorized by, or affiliated with MLA.  These deceived consumers would not have purchased the Infringing Works, and would have purchased the authentic *Handbook* instead, had they known the truth about the Infringing Works' lack of approval, endorsement, authorization, and affiliation.

77.     For example, the following reader review from the book recommendation site Goodreads.com reflects that the reviewer incorrectly believed that one of the Infringing Works was, in fact, "[f]rom the Modern Language Association":





**MLA Handbook 9th Edition Simplified: Concise Guide to the MLA 9th Edition Handbook: MLA Quick Study Guidelines Made Easy (Student Citation Styles)**

by Appearance Publishers

Timothy Sharkey's review                                    Apr 28, 2022

bookshelves: writing-guides

From The Modern Language Association. Available practically everywhere. The MLA guidlines for writing college research papers and other scholarly treatises are explained here.

 Like · 🚩 flag

78.     MLA's employees have observed this confusion first-hand.  At MLA's annual convention in January 2023, an attendee approached an MLA employee with a copy of *9S* in hand and asked if MLA was selling copies of that Infringing Work at the convention.

According to the MLA employee, the attendee "was surprised to learn that [MLA] did not publish that title and that it was unauthorized." Explaining her surprise, the attendee "made a gesture to the cover art, which mimics the image on [the authentic] *Handbook*."

79.     Because the Infringing Works are of inferior quality, consumers' confusion between the *Handbook* and the Infringing Works, and their spurious association of the Infringing Works with MLA, has caused irreparable harm to MLA's reputation for excellence in the field of language arts.

80.     On information and belief, the Infringing Works are still being widely marketed, distributed, and sold, causing ongoing monetary and reputational harm to MLA in an amount that cannot be quantified or remedied through monetary damages.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement
### (Against All Defendants)

81.     MLA re-alleges and incorporates by reference paragraphs 1 through 80 of this Complaint.

82.     MLA is the sole proprietor of all right, title and interest in and to the copyright in the *Handbook*. As provided by 17 U.S.C. § 106, MLA has the exclusive right to, *inter alia*, reproduce, distribute, and prepare derivative works (including abridgements and "simplifications") from the *Handbook*.

83.     MLA has registered its claim to copyright in the *Handbook* under Registration Number TX 8-962-785, effective April 14, 2021. On information and belief, that registration occurred before the infringing conduct at issue in this Complaint commenced.

84.     Defendants have directly infringed MLA's copyright in the *Handbook* by unlawfully reproducing, transmitting, distributing, and creating derivative works based on the

*Handbook*, all in violation of MLA's exclusive rights under 17 U.S.C. § 106.

85.     In addition, or in the alternative, Defendants have secondarily infringed MLA's copyright in the *Handbook* by, *inter alia*, knowingly inducing the infringing conduct alleged in this Complaint, aiding and abetting the infringing conduct alleged in this Complaint, and/or providing the site and facilities for the known infringing conduct alleged in this Complaint and directly profiting from such infringement.

86.     Upon information and belief, the foregoing actions of Defendants in violation of MLA's rights have been willful and intentional, executed with full knowledge of MLA's exclusive rights, and in conscious disregard of those rights.

87.     MLA is entitled to recover from Defendants the profits that Defendants obtained through infringements of MLA's copyright as well as MLA's damages from those infringements, or, at MLA's election, statutory damages pursuant to 17 U.S.C. § 504.

88.     MLA is also entitled to recover costs and attorney's fees from Defendants pursuant to 17 U.S.C. § 505.

89.     Defendants' liability for these sums is joint and several.

90.     Defendants' infringements of MLA's copyright have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to MLA not fully compensable in monetary damages.  MLA is therefore entitled to preliminary and permanent injunctions prohibiting Defendants from further infringing MLA's copyright.

## SECOND CLAIM FOR RELIEF

### Violation of Lanham Act § 43(a)
### (Against All Defendants)

91.     MLA re-alleges and incorporates by reference paragraphs 1 through 80 of this Complaint.

21

92.     Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) makes it unlawful, "in connection with any goods or services, [to] use[] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

93.     As alleged above, the cover design of the Infringing Works, including their prominent use of the name "MLA," their reproduction of MLA's characteristic five-color rainbow motif, and their copying of the color scheme and typeface of the *Handbook*'s cover—as well as the lack of any disclaimer that the Infringing Works are not authorized by or affiliated with MLA—is likely to cause (and has in fact caused) consumers to believe that the Infringing Works are produced by, affiliated with, connected with, sponsored by, and/or approved by MLA.

94.     Upon information and belief, the foregoing actions of Defendants in violation of MLA's rights have been willful and intentional, executed with full knowledge of MLA's exclusive rights, and in conscious disregard of those rights.

95.     Pursuant to 15 USC § 1117(a), MLA is entitled to recover from Defendants the profits that Defendants obtained through their violations of the Lanham Act, and/or up to three times MLA's damages from those violations, plus its costs of suit.

96.     As this is an "exceptional case," MLA is also entitled to recover its attorney's fees from Defendants pursuant to 17 U.S.C. § 505.

97.     Defendants' liability for these sums is joint and several.

98.     Defendants' Lanham Act violations have caused, and, unless restrained by

this Court, will continue to cause, irreparable injury to MLA not fully compensable in monetary damages. MLA is therefore entitled to preliminary and permanent injunctions prohibiting Defendants from committing further Lanham Act violations.

## THIRD CLAIM FOR RELIEF

### Misrepresentation Under 17 U.S.C. § 512(f)
### (Against Defendants V-King Services SAS and Vincent Klimmeck)

99.     MLA re-alleges and incorporates by reference paragraphs 1 through 80 of this Complaint.

100.     Pursuant to 17 U.S.C. § 512(f), "[a]ny person who knowingly materially misrepresents [in a DMCA counter-notice] ... that material or activity was removed or disabled by mistake or misidentification ... shall be liable for any damages, including costs and attorneys' fees, incurred ... by any copyright owner" who has filed a DMCA notice of infringement.

101.     As alleged above, Defendants V-King Services SAS and Vincent Klimmeck filed a DMCA counter-notice with Amazon.com stating that "the material identified in [MLA's] Notice of Infringement was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled." This statement was knowingly and materially false when made. Defendants V-King Services and Vincent Klimmeck made this misrepresentation with full knowledge of MLA's exclusive rights, and in conscious disregard of those rights.

102.     Therefore, Defendants V-King Services and Vincent Klimmeck are liable for any damages, including costs and attorney's fees, which MLA has incurred or may incur as a result of the false and fraudulent counter-notice.

## PRAYER FOR RELIEF

**WHEREFORE**, MLA demands judgment:

A.      preliminarily and permanently restraining Defendants from infringing MLA's copyright in the *Handbook*, or aiding, abetting, or assisting such infringement, including through the printing, sale, lease, or other reproduction or distribution of the Infringing Works or any other works substantially similar thereto;

B.      awarding MLA up to three times its actual compensatory damages in an amount to be determined at trial, or, if MLA so elects, with respect to the First Claim for Relief, statutory damages in an amount to be determined at trial, in an amount not less than $750 and up to $30,000 for each work infringed, which may be increased to $150,000 per work infringed where, as here, the infringement is willful;

C.      requiring disgorgement to MLA of the profits made by Defendants attributable to their unlawful conduct, to the extent not taken into account in computing MLA's actual damages, adjusted in accordance with the equities of the case;

D.      awarding MLA its costs in this action, including reasonable attorney's fees; and

E.      awarding MLA such other and further relief as this Court deems just, proper, and equitable.

Dated:        New York, New York
              May 11, 2023

                        Respectfully submitted,


                        /s/ *Jonah M. Knobler*
                        Jonah M. Knobler
                        Caitlin A. Ross
                        PATTERSON BELKNAP WEBB & TYLER LLP

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues as to which jury trial is available.

Respectfully submitted,


/s/ *Jonah M. Knobler*
Jonah M. Knobler
Caitlin Ross
PATTERSON BELKNAP WEBB & TYLER LLP